JERRY MADDEN AND TIMOTHY CULLMAN v. MINNIE M. LEMKE.

*Sale—Construction of contract.*

Plaintiffs sold defendant a quantity of cedar posts, and agreed to deliver them free on board the cars at the place of shipment, as wanted. The posts were to be subject to inspection by a person appointed by the defendant at the time and place of loading, whose inspection was to be final, and were to paid for upon such delivery and acceptance as fast as each five cars were loaded, at an agreed price per post. The defendant agreed to commence shipping the posts on or about May 1, and to tally up and pay for and receive on the ground where they lay any posts remaining unshipped on July 15 following, on or before which date the plaintiffs were to deliver the posts. Defendant failed to inspect or take any of the posts, and plaintiffs sold them for less than the contract price, and brought this action to recover the difference. The jury rendered

a verdict in their favor, and also found specially that the defendant did not go to the place of shipment on July 15 to receive, tally, and pay for the posts, nor did plaintiffs have any one there to deliver and receive payment for the posts, which were not there in a condition to be counted by the defendant. The trial court set aside the general verdict, and directed the entry of a verdict of no cause of action, which latter verdict is set aside, and the court is directed to enter judgment on the original verdict; the Court holding that the agreement of the defendant as to shipment, inspection, and payment was a condition precedent to her agreement to tally up and pay for and receive the unshipped posts on July 15, and having failed to make any shipments by that date, on which the contract was to be fully completed, defendant was bound to tally up all the posts where they lay, and receive and pay for them on July 15, the evidence showing that it was through her fault that the posts were not then in a condition to be counted, and that defendant's agent did not go to the place of shipment on that day intending to receive, pay for, and tally the posts.

Error to Menominee. (Stone, J.) Argued April 10, 1891. Decided May 21, 1891.

*Assumpsit.* Plaintiffs bring error. Reversed, and circuit court directed to enter judgment for plaintiffs for $1,200. The facts are stated in the opinion.

*W. H. Phillips,* for appellants.

*Sawyer & Waite,* for defendant.

LONG, J. Plaintiffs contracted in writing with defendant to sell her about 85,000 cedar posts, on April 16, 1889. The posts were then at a place called Defiance or Trombley, a siding on the Chicago & Northwestern Railway north of Escanaba, this State. Defendant lived at Menominee. The contract provided that defendant was to receive the posts free on board cars at Defiance, and subject to her own inspection, and the shipping was to commence on or about May 1, to be paid for as fast as five cars were loaded. The contract further provided that

"said Lemke agrees to tally up and pay for and receive on the ground where they lay any posts remaining unshipped the 15th day of July, 1889." The price to be paid is set forth in the contract.

Defendant did not commence shipping about May 1, and failed to inspect or take any of the posts. Plaintiffs finally sold the posts for from one to two and one-half cents per post less than the contract price. The present action is brought to recover for this loss. The jury returned a verdict for the plaintiffs for the sum of $1,200. They also, at the request of the defendant's counsel, returned the following special findings:

"1. Did Lemke go to Defiance, July 15, 1889, to receive, tally, and pay for posts?
"*A*. No.
"2. Did plaintiffs have anybody at Defiance, July 15, 1889, to deliver and receive payment for the posts?
"*A*. No.
"3. Were the posts in condition to be counted by defendant, July 15, 1889?
"*A*. No."

Afterwards the trial court set aside the general verdict, and ordered verdict entered for the defendant of no cause of action. Judgment was entered upon this verdict, and plaintiffs bring error.

The errors assigned which we shall discuss relate to the setting aside of the verdict rendered for plaintiffs, and entering verdict and judgment in favor of defendant.

It appears that at the time the contract was entered into the posts were piled in large piles on each side of the spur track at this station, and in such condition that they could not be readily inspected and counted, and that to count and inspect them it would be necessary to move them. The contention of the defendant is that it was not intended by the contract to bind defendant to ship any posts before July 15, 1889, unless she could dispose

of them, and thus avoid handling them unnecessarily. The spur track was not completed at the time the contract was made, but was completed on May 6, so that the shipping might have commenced on that date.

The contract does not bear the construction contended for by the defendant. It was plainly the intention of the parties that the defendant should commence shipping the posts as soon as the spur track was completed, so that they could be handled. They were, by the terms of the contract, to be inspected by a person appointed by defendant at the time and place of loading, and to be paid for in five car lots. These were conditions precedent to the agreement of the defendant to tally up and pay for and receive on the ground where they lay any posts remaining unshipped on July 15, 1889. It is quite evident, as contended by counsel for plaintiffs, that, had defendant shipped a portion of the posts, they would have been sorted and tallied into the cars, and consequently the piles would have been broken, and the posts remaining unshipped in a shape to have been tallied on the ground where they lay. The defendant having failed to ship any of the posts before July 15, 1889, the date on which the contract was to be fully completed, she was bound by the terms of the contract to tally up all the posts on the ground where they lay, and receive and pay for them. This is the plain meaning of the contract.

The third finding of the jury, that the posts were not in a condition to be counted on July 15, 1889, was not a fact to be weighed against the general verdict in favor of the plaintiffs. That they were not in a condition to be counted was her fault. Her husband, who was acting as her agent, and who made the contract for and in her behalf, and who attended to all her business, was constantly importuned by plaintiffs to commence shipping.

Mr. Madden, one of the plaintiffs, saw Mr. Lemke on May 8, and told him they were ready to ship. He saw him again on May 20, and about July 1, each time urging him to commence to ship, and stating to him that plaintiffs' creditors were pressing them. Mr. Madden also told him that he had a chance to sell 50,000 of the posts to other parties, but was assured by Lemke that he would take them all; that he had sold them, and must have them to fill his contract. After the contract expired, and on July 17, Mr. Madden saw him again, and insisted that he take the posts. Lemke said he could not take them then, but thought he could before the end of the season. Mr. Madden then offered to sort the posts where they lay on the ground, so that they could be inspected, if Lemke would advance money enough on the contract to pay for assorting, though by the terms of the contract the plaintiffs were not to assort, except into the cars all that were shipped prior to July 15, 1889. Lemke said he would do this if plaintiffs would take his note, which Mr. Madden declined. Mr. Lemke admits that he was advised by Madden that the posts were ready for shipment, as claimed by Madden, and the only excuse he gives for not shipping is that the market was flat, and he could not sell.

The jury in the first finding say that Lemke did not go to Defiance, July 15, 1889, to receive, tally, and pay for the posts. This finding, under the evidence given by Mr. Lemke, probably is that Mr. Lemke did not go there intending to tally and take the posts, and there was evidence in the case fully supporting this finding. Mr. Lemke testifies that he went there on that day for the purpose of receiving and paying for the posts; that when he reached there he saw a large pile of posts, and inquired of some men there if they were Madden & Cullman's posts, and was told that they were; that neither of the

plaintiffs were there, and the posts were piled so high it was impossible for any one to count them. He does not claim that he had any cars there for shipment of the posts, and he never made any effort to take or count or tally a single post. His whole conduct in the matter was such that the jury were justified in finding that when he went there, on the 15th of July, he did not go to receive, tally, and pay for the posts.

The further finding of the jury, that plaintiffs had no one there at Defiance on July 15, 1889, to deliver and receive pay for the posts, is wholly immaterial. The defendant was in fault from the beginning in not shipping as provided by the contract, so that the posts remaining unshipped could have been counted and tallied upon the ground where they lay. Mr. Lemke knew the condition they were in, and, failing to make any shipments before that day, he was bound to tally and take them all on July 15. The court was therefore in error in setting aside the general verdict, and entering verdict for the defendant.

The verdict and judgment for the defendant will be set aside. The verdict rendered for the plaintiffs of $1,200 will stand, and the court below will be directed to enter judgment thereon in favor of plaintiffs for $1,200, with costs of that court. The plaintiffs will also recover the costs of this Court.

CHAMPLIN, C. J., MORSE and MCGRATH, JJ., concurred. GRANT, J., did not sit.